IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBIN G. SMITH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-337 |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

## I. Introduction

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. Doc. Nos. 8 & 10. The Court has jurisdiction in this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Plaintiff's motion for summary judgment (*Document No. 10*) will be granted, and the Defendant's motion for summary judgment (*Document No. 8*) will be denied. In accordance with the fourth sentence of § 405(g), the decision of the Commissioner of Social Security ("Commissioner") will be reversed.[1]

## II. Procedural History

Plaintiff Robin G. Smith ("Smith") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on April 11, 2007, alleging disability as of January 8, 2007. (R. 97, 100, 104). The applications were administratively denied on June 18, 2007. (R. 53, 58). Smith responded on August 10, 2007, by filing a timely request for an administrative hearing. (R. 63). On November 4, 2008, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge Karl Alexander (the "ALJ"). (R. 25). Smith, who was represented by counsel, appeared and testified at the hearing. (R. 28-44). James Ganoe

---

[1] The fourth sentence of 42 U.S.C. § 405(g) provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

("Ganoe"), an impartial vocational expert, also testified at the hearing. (R. 44-48). In a decision dated February 10, 2009, the ALJ determined that Smith was not "disabled" within the meaning of the Act. (R. 7-24). The Appeals Council denied Smith's request for review on January 28, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. 1). Smith commenced this action on March 12, 2010, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 4. Smith and the Commissioner filed cross-motions for summary judgment on July 9, 2010. Doc. Nos. 8 & 10. These motions are the subject of this memorandum opinion.

### III.     Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant

numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

### IV.     The ALJ's Decision

In his decision, the ALJ determined that Smith had not engaged in substantial gainful activity subsequent to her alleged onset date. (R. 12). Smith was found to be suffering from a ligament disorder in her right knee, mild spondylitic changes of the lumbar spine (with Grade I spondylolisthesis at L4-5), a history of bilateral carpal tunnel syndrome (*i.e.*, status post surgeries with normal grip strength thereafter), neck pain, headaches, obesity, a depressive disorder, and an anxiety/panic disorder. (R. 12-13). These impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). (R. 12-13). The ALJ concluded that Smith's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. 14-16).

4

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Smith's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain modifications. She requires a sit/stand option; can perform postural movements occasionally, except cannot kneel, crawl or climb ladders, ropes or scaffolds; should not be exposed to temperature extremes, wet/humid conditions or hazards; should work in a low stress environment with no production line type of pace or independent decision making responsibilities; is limited to unskilled work involving only routine and repetitive instructions and tasks; and should have no more than occasional interaction with other persons.

(R. 16-17).[2] In light of this assessment, it was determined that Smith could not return to her past relevant work as a manager in the retail food industry. (R. 22).

Smith was born on January 8, 1968, making her thirty-nine years old as of her alleged onset date and forty-one years old as of the date of the ALJ's decision. (R. 97, 100). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a high school education and an ability to communicate in English. (R. 22). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Smith could work as a price marker, garment sorter, addresser/stuffer, or general sorter and setter. (R. 23). Ganoe's testimony established that these jobs existed in the national economy within the meaning of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[3] (R. 46).

## V. Discussion

Smith argues that the ALJ erred in failing to accord significant weight to her testimony at the hearing. Doc. No. 11 at 4-5. She also contends that the ALJ improperly relied on

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

speculative inferences from the medical evidence in deciding to deny her applications. *Id.* at 5-6. A careful evaluation of the evidentiary record reveals that Smith's assertions are meritorious.

The record does not contain documentation related to prior DIB and SSI applications filed by Smith. Nevertheless, the ALJ observed in his opinion that Smith had unsuccessfully applied for DIB and SSI benefits in 1978, 1995 and 2005. (R. 10). Smith testified at the hearing that she had tried to commit suicide in 1995. (R. 30). Her 1995 applications presumably bore some relation to her suicide attempt. It is not entirely clear what prompted her to file her more recent DIB and SSI applications in 2005.[4]

Although the circumstances surrounding Smith's 2005 applications are not entirely apparent, Smith places significant reliance on the results of a consultative medical examination that was performed in connection with those applications.[5] Dr. Victor Jabbour performed a consultative medical examination of Smith on March 7, 2006. (R. 167-171). Smith experienced "mild difficulty" in getting on and off of the examination table. (R. 170). She was unable to walk on her heels and toes. (R. 170). She was also unable to squat. (R. 170). The examination revealed that Smith had tenderness in her "lumbosacral spine area." (R. 171). Dr. Jabbour noted that Smith had "[n]eck pain secondary to arthritis and possible disc disease," "[b]ack pain secondary to arthritis and disc disease," and "[p]ain in the right hips secondary to arthritis." (R. 171).

On March 16, 2006, Dr. Jabbour completed a "medical source statement" form describing Smith's physical limitations. (R. 172-173). The form contained the following language:

> Doctor: Please assess the claimant's ability to engage in full-time employment in a regular work setting. You should consider the combined effects of all impairments, the side effects of any medication, and the effects of symptoms (e.g., pain, fatigue, etc.) The ASSESSMENT SHOULD REFLECT MAXIMUM

---

[4] The record indicates that Smith underwent a hysterectomy on December 16, 2005, because she had been diagnosed with cervical cancer. (R. 167-168). The record does not contain evidence linking specific functional limitations to Smith's cervical cancer, the resulting surgical procedure, or related gynecological impairments.
[5] The instant applications were protectively filed on April 11, 2007. (R. 104). Dr. Victor Jabbour performed a consultative medical examination of Smith on March 7, 2006. (R. 167-171). Because Dr. Jabbour's examination predated the filing of the instant applications by over a year, the Court assumes that the examination was conducted in connection with Smith's 2005 applications.

6

> PHYSICAL CAPACITY, not a median or minimum. Your opinion should be based on clinical signs and laboratory findings, NOT ON THE INDIVIDUAL'S STATEMENTS.

(R. 172). On the form, Dr. Jabbour reported that Smith could frequently lift or carry objects weighing between two and three pounds and occasionally lift or carry objects weighing up to ten pounds. (R. 172). He indicated that Smith could not stand or walk for up to one hour, or sit for up to six hours, during the course of an eight-hour workday. (R. 172). Smith was deemed to be "limited" in her abilities to push and pull with her upper extremities. (R. 172). Dr. Jabbour opined that Smith could engage in only occasional bending, kneeling, stooping, crouching, balancing or climbing, and that she needed to avoid unprotected heights, moving machinery, temperature extremes, and environments exposing her to vibration. (R. 173).

When questioned by Smith's counsel at the hearing, Ganoe testified that no full-time jobs existed in significant numbers in the regional or national economy for an individual who could not walk for more than one hour, or sit for up to six hours, during the course of an eight-hour workday. (R. 47-48). Under the Commissioner's regulations, work can constitute "substantial gainful activity" even if it is performed on a part-time basis. 20 C.F.R. §§ 404.1572(a), 416.972(a). For this reason, a claim can sometimes be denied at the first step of the sequential evaluation process if the claimant is working on a part-time basis, even if he or she has impairments which prevent him or her from performing the duties of a full-time job. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the *fifth* step of the process, however, the Commissioner cannot satisfy his burden without proving the existence of jobs in the regional or national economy that a claimant can perform on a *full-time* basis. *Bladow v. Apfel*, 205 F.3d 356, 359-360 (8th Cir. 2000); *Kelley v. Apfel*, 185 F.3d 1211, 1213-1215 (11th Cir. 1999); *Carlisle v. Barnhart*, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005); *Grove v. Barnhart*, 382 F.Supp.2d 1104, 1111 (S.D.Iowa 2005); *Moody v. Barnhart*, 295 F.Supp.2d 1278, 1283 (N.D.Ala. 2003). Smith's applications were denied at the fifth step of the sequential evaluation process. (R. 22-23). Had Dr. Jabbour's examination report (and the corresponding hypothetical question posed by Smith's counsel) been fully credited by the ALJ, a finding of "disability" would have been forthcoming.

The ALJ accorded only "limited weight" to Dr. Jabbour's opinion. (R. 19). He stated that "no objective support" for the limitations described by Dr. Jabbour had been presented by Smith. (R. 19). The ALJ further declared that Dr. Jabbour had based his consultative opinion entirely on Smith's "subjective allegations." (R. 19).

Smith places significant reliance on Dr. Jabbour's examination report. Doc. No. 11 at 3-5. Dr. Jabbour's consultative examination (and corresponding report) predated Smith's alleged onset date by ten months. When Smith filed the instant DIB and SSI applications, she stated that she had stopped working on January 8, 2007, due to injuries sustained in an automobile accident. (R. 131). She testified at the hearing that the car accident had rendered her unable to work. (R. 29). Prior to the accident, Smith had been working as a manager in the retail food service business.[6] (R. 131). A treatment note provided by Dr. Kuk S. Lee, a treating physician, indicates that Smith was unable to work as of January 11, 2007, because of injuries attributable to the accident of January 8, 2007. (R. 193-194). At that time, Dr. Lee advised Smith to refrain from working for at least two weeks. (R. 194). A magnetic resonance imaging ("MRI") scan of Smith's lumbar spine conducted on January 18, 2007, revealed that she was suffering from "[m]ild degenerative spondylosis with a minimal anterior spondylolisthesis at L4-5." (R. 198, 227).

Smith subsequently sought treatment at the Health First Medical Center ("HFMC") in Dunbar, Pennsylvania. (R. 228-287). The HFMC's clinical director is Dr. Fred C. Edge, who is both a medical doctor and a chiropractor. (R. 230, 280). The HFMC's medical director is Dr. Mark G. Franz, who is a doctor of osteopathy. (R. 230, 280). On April 13, 2007, Dr. Theodore B. Barko, Jr., a certified chiropractic sports practitioner employed by the HFMC, completed a "work capacity determination form" describing Smith's physical limitations.[7] (R. 280).

---

[6] Dr. Jabbour's examination report is not necessarily undermined by the fact that Smith did not stop working until January 8, 2007. Smith testified at the hearing that she had been working for Kentucky Fried Chicken on a part-time basis at the time of her accident, and that this arrangement had lasted for approximately one year. (R. 31). Because Smith's job was a part-time position, it did not necessarily require the performance of tasks exceeding the limitations identified by Dr. Jabbour on March 16, 2006. (R. 172-173).

[7] A chiropractor is not considered to be an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Nonetheless, a report supplied by a chiropractor can still be considered in determining whether a claimant is statutorily "disabled." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). It is not clear whether Dr. Barko was speaking on his own behalf when he completed a "work capacity determination form" for

8

According to Dr. Barko, Smith was able to sit for up to two hours, stand or walk for up to fifteen minutes, and drive for up to one hour during the course of an eight-hour workday. (R. 280). Dr. Barko reported that Smith could "occasionally" lift, carry, push or pull objects weighing up to five pounds, and that she could "never" lift, carry, push or pull objects weighing six pounds or more. (R. 280). He indicated that Smith could "never" squat, kneel, crawl or climb ladders, and that she could engage in only "occasional" bending, overhead reaching and stair-climbing. (R. 280). Dr. Barko further opined that Smith could "never" be exposed to unprotected heights, moving machinery or unprotected machinery, and that she could tolerate only "occasional" exposure to dust, fumes, gases, odors and marked changes in temperature and humidity. (R. 280). At the bottom of the form, Dr. Barko noted that Smith needed to refrain from working until May 3, 2007. (R. 280). At that time, the estimated length of Smith's "temporary restrictions" was "unknown." (R. 280).

During the course of her treatment at the HFMC, Smith apparently experienced some improvement in her condition. A "work capacity determination form" completed by HFMC personnel on May 16, 2007, indicated that Smith could sit, stand, walk or drive for a "total" of four hours during the course of an eight-hour workday. (R. 230). The individual completing the form reported that Smith could "frequently" lift or carry objects weighing up to ten pounds and "occasionally" lift or carry objects weighing up to twenty pounds. (R. 230). At that point, it was determined that Smith could tolerate "occasional" exposure to unprotected heights, moving machinery and unprotected machinery. (R. 230). Smith was deemed to be capable of working on "modified duty" through June 16, 2007. (R. 230). Although the form appears to have been completed by somebody affiliated with the HFMC, it was never signed. (R. 230).

Dr. Bud Lateef, a physiatrist, examined Smith on September 7, 2007. (R. 333-334). At that time, Smith was still on leave from work because of injuries sustained in the automobile accident of January 8, 2007. (R. 334). It was recommended that she undergo a "cervical facet medial branch block under fluoroscopy." (R. 333). The procedure was performed on September 21, 2007. (R. 331). When Smith returned to Dr. Lateef's office on November 21, 2007, she reported that while she had initially experienced some improvement, significant pain

---

Smith, or whether he was speaking on behalf of Dr. Edge and Dr. Franz. The Court notes that the ALJ, in his opinion, stated that the form had been completed by a "chiropractor/medical doctor." (R. 20).

9

in her neck had returned after she had briefly started to work again. (R. 330). Dr. Lateef recommended that Smith undergo physical therapy in order to facilitate her return to work. (R. 330).

Dr. Grant Coyle, a non-examining medical consultant, opined on March 22, 2006, that Smith had no "severe" mental impairments. (R. 176-188). A similar assessment was provided by Dr. Edward Jones, another non-examining medical consultant, on June 18, 2007. (R. 309-321). At the hearing, however, Smith testified that she had started to experience panic attacks shortly after the automobile accident. (R. 32-37). Smith was evaluated by Dr. Charles H. Goyette, a licensed psychologist, on May 15, 2007. (R. 204-210). Dr. Goyette reported that Smith was suffering from a major depressive disorder on a recurrent basis. (R. 208). In a report dated May 21, 2007, Dr. Goyette made the following observations:

> Considering the barriers to employment in this case, it is the opinion of this examiner that Ms. Smith will not be able to obtain and maintain full-time employment for at least twelve to twenty-four months. It is recommended that Ms. Smith continue to address her emotional distress via pharmacotherapy and counseling, and be referred to the Pennsylvania Office of Vocational Rehabilitation in the next six to twelve months for vocational case management and career counseling. Although Ms. Smith has worked in food services during most of her adult life, she will not likely be able to perform this work in light of her physical injuries and psychiatric disorder. Accordingly, Ms. Smith would benefit from a community-based assessment to determine her ability to work in an appropriate vocational capacity. Initial employment will need to be limited to part-time, supervised work using a transitional employment or other supported work model.

(R. 209). Dr. Goyette went on to state that Smith's "disabilities" were "too severe and pervasive for her to be successful at any vocational goal." (R. 209).

Dr. Ravindra Mehta, a treating psychiatrist, described Smith's mental limitations in a "mental residual functional capacity questionnaire" dated October 27, 2008. (R. 345-346). Dr. Mehta reported that Smith's abilities to interact appropriately with members of the general public, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, and to use public transportation were "limited but satisfactory." (R. 346). Smith was deemed to be "seriously limited" in her ability to travel to unfamiliar places. (R. 346). Her prognosis was described as being "fair to good." (R. 345). Dr. Mehta indicated that Smith's

10

mental impairments were expected to last for at least twelve months. (R. 346). In response to an inquiry as to whether Smith was a malingerer, Dr. Mehta wrote the word "unknown." (R. 346).

The ALJ accorded "little weight" to Dr. Jabbour's opinion because he deemed it to be unsupported by objective evidence. (R. 19). He also gave "little weight" to the "work capacity determination forms" submitted by HFMC personnel, claiming that the limitations described therein were likewise unsupported by objective evidence. (R. 20). The ALJ accorded "no weight" to Dr. Goyette's opinion of disability, stating that it had been based primarily on Smith's "subjective allegations" rather than on independent findings. (R. 20). Turning to Dr. Mehta's opinion, the ALJ stated as follows:

> The claimant's psychiatrist completed a Mental Residual Functional Capacity Questionnaire, apparently at the request of the claimant's attorney, on October 27, 2008. He found that the claimant's prognosis was fair to good and assessed her Global Assessment of Functioning as 57, or moderate symptoms. The undersigned notes that the psychiatrist answered "unknown" to the question "Is your patient a malingerer?" This response suggests at least some doubt in the matter to the Administrative Law Judge. However, the undersigned concurs that the claimant has no more than moderate limitations due to her mental impairments (Exhibit B-14f) [sic]
>
> Although the record does contain some GAF scores as low as 35 or 40, the undersigned finds that the scores do not appear to be justified based on the reports of the claimant's functioning at the time that the scores were given. Regarding GAF scores in general, the Administrative Law Judge accords them relatively little weight or reliability in determining a claimant's mental status or functioning over any period of twelve or more continuous months. These scores are essentially based on the claimant's subjective complaints and other statements at that particular time, which the evaluator rarely questions. This body of uncorroborated subjective statements is then subjectively processed through the evaluator's own individual mindset and interpretations regarding mental impairments, symptoms, severity and other factors. The undersigned believes that such a process can lead to inaccuracies and inconsistencies and indeed, there have been many instances in which a claimant has received significantly different GAF scores from different evaluators within a short period of time. Thus these scores are accorded only limited weight.

(R. 21). The ALJ concluded his opinion by remarking that Smith's status as an unmarried mother of three young children had given her "a very strong motivation" to exaggerate her symptoms, to "collect medical benefits," and to "collect cash payments." (R. 22).

The United States Court of Appeals for the Third Circuit has made clear that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence." *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). An administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence."[8] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). As the ALJ acknowledged in his opinion, the record in this case contains no "physical" residual functional capacity assessment from a non-examining medical consultant.[9] (R. 22). The ALJ was not entitled to construct his residual functional capacity assessment from his own interpretation of raw medical data, without the assistance of medical sources. *Rivera-Torres v. Secretary of Health & Human* Services, 837 F.2d 4, 6-7 (1st Cir. 1988); *Barton v.* Astrue, 549 F.Supp.2d 1106, 1122-1123 (E.D.Mo. 2008); *Brown v. Barnhart*, 285 F.Supp.2d 919, 931-933 (S.D.Tex. 2003); *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000); *Gathright v. Shalala*, 872 F.Supp. 893, 898 (D.N.M. 1993). Since the ALJ's determination that Smith was capable of performing the "light" and "sedentary"[10] jobs identified by Ganoe was contrary to the opinion of every physician who had treated or examined Smith in connection with her physical impairments, it was not properly based on medical evidence. The ALJ's decision constituted an impermissible rejection of competent medical evidence based solely on his own credibility judgments, speculation, and lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

---

[8] Where medical sources provide conflicting opinions, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In this case, however, the ALJ rejected the opinions expressed by medical sources without grounding his decision in contrary medical evidence.

[9] Even if the ALJ had relied on a report supplied by a non-examining medical consultant, it is doubtful that such a report would have provided a sufficient basis for the rejection of the opinions expressed by physicians who had actually examined and treated Smith. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

The ALJ also erred in dismissing the findings of Smith's treating and examining physicians on the ground that those findings had been based solely on Smith's subjective complaints. As an initial matter, the ALJ was required to give serious consideration to Smith's subjective complaints, since the record clearly contained evidence of impairments that could reasonably be expected to cause disabling pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). It should come as no surprise that the examination reports contained in the record were influenced, to some extent, by information provided by Smith. That does not mean that the examination reports were lacking in probative value. *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)("But an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988)("While a medical examination necessarily involves a subjective element (an evaluation of the credibility of the patient's subjective complaints of pain), it is also based on an observation of the patient and an evaluation of his medical history, and thus may constitute the necessary objective medical evidence which must support a claim of disabling pain.").

For the foregoing reasons, the ALJ's decision cannot stand. The only remaining question is whether an immediate award of benefits is warranted, or whether the proper remedy is a remand for further administrative proceedings. A judicially-ordered award of benefits is called for only where the record has been fully developed, and where the evidence contained in the record clearly points in favor of a finding that the claimant is disabled. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357-358 (3d Cir. 2008). That standard has been satisfied in this case. Dr. Jabbour, an impartial examiner, indicated on March 16, 2006, that Smith could not stand or walk for more than one hour, or sit for up to six hours, during the course of an eight-hour workday. (R. 172). Ganoe testified at the hearing that no full-time jobs existed in significant numbers in the regional or national economy for an individual with those limitations. (R. 47-48). Although Smith was still working at Kentucky Fried Chicken prior to her accident of January 8, 2007, she testified that she had been working on only a part-time basis. (R. 31). Therefore, her ability to work between March 16, 2006, and January 8, 2007, did not

significantly undermine Dr. Jabbour's consultative opinion. The treating sources at the HFMC opined that, as of May 16, 2007, Smith could sit, stand, walk or drive for a *total* of four hours during the course of an eight-hour workday. (R. 230). In his decision, the ALJ explicitly recognized that this opinion, if credited, would warrant a finding that Smith could not perform the duties of a full-time job. (R. 20). The Commissioner points to no evidence which directly contradicts the assessments provided by these medical sources.

In order for a claimant to be statutorily "disabled," both his or her *medically determinable impairments* and his or her *inability to work* must last (or be expected to last) for the duration of the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). The accident that rendered Smith "disabled" occurred on January 8, 2007. (R. 29, 131). Dr. Lateef noted on November 21, 2007, that Smith's pain was still inhibiting her ability to work. (R. 330). Nothing in the record suggests that Smith's condition suddenly improved between November 21, 2007, and January 8, 2008. Consequently, Smith has presented sufficient evidence to satisfy the Act's twelve-month durational requirement. This case will be remanded to the Commissioner solely for a calculation of the DIB and SSI benefits to which Smith is entitled.

### VI. Conclusion

The decision of the Commissioner is not "supported by substantial evidence" within the meaning of § 405(g). Accordingly, Smith's motion for summary judgment (*Document No. 10*) will be granted, the Commissioner's motion for summary judgment (*Document No. 8*) will be denied, and the Commissioner's administrative decision will be reversed. The case will be remanded to the Commissioner solely for a calculation of the benefits to which Smith is entitled under Titles II and XVI of the Act.

The Commissioner remains free to monitor the status of Smith's condition in order to assess her continuing eligibility for benefits. It is apparent from the record that Smith's treating physicians did not believe that her limitations would be permanent. (R. 209, 230, 280, 330). At the hearing, Smith's counsel conceded that if Smith were to be successful in her attempt to secure benefits under the Act, her case would warrant an "early review" under the Commissioner's regulations. (R. 49). It will be the prerogative of the Commissioner to

14

periodically reevaluate Smith's condition in conformity with the applicable regulations. 20 C.F.R. §§ 404.1590(d), 416.990(d). In the meantime, he cannot deny her the benefits to which she is clearly entitled. An appropriate order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN G. SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 10-337 |

## ORDER OF COURT

AND NOW, this 6th day of October, 2010, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the Defendant's Motion for Summary Judgment (*Document No. 8*) is **DENIED**, and that the Plaintiff's Motion for Summary Judgment (*Document No. 10*) is **GRANTED**. The decision of the Commissioner of Social Security is hereby **REVERSED**, and the case is remanded to him solely for a calculation of the benefits to which the Plaintiff is entitled.

s/ Terrence F. McVerry
Terrence F. McVerry
United States District Judge

cc: All counsel of record